# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH CAMPBELL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, and VOLKSWAGEN AG, a foreign corporation,<br><br>                              Defendants. | Case No.  5:20-cv-518 (FJS/ATB)<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Joseph Campbell ("Plaintiff"), by and through counsel, brings this Class Action Complaint against Volkswagen AG ("VWAG") and Volkswagen Group of America, Inc. ("VW" and, collectively with VWAG, "Defendants") on behalf of himself and all others similarly situated. Plaintiff alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this case individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased 2015-present Audi A1 Mk2, Audi A3 Mk3, Audi TT Mk3, Audi Q2, Audi Q3, Volkswagen Arteon, Volkswagen Atlas/Teramont, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Polo, Volkswagen Tiguan, Volkswagen Touran, and the Volkswagen Touareg vehicles that were designed, manufactured, distributed, marketed, and sold or leased with a sunroof ("Vehicles" or "Class Vehicles") by Defendants or Defendants' parent, subsidiary, or affiliates thereof.

2.      Defendants designed, manufactured, distributed, marketed, sold, and leased the Vehicles to Plaintiff and Class Members with defective sunroofs. The Vehicles' sunroofs were specifically and especially designed, manufactured, and approved by Defendants to be installed in the Vehicles. The defective sunroofs in all of the Vehicles are substantially similar in design and manufacture with the same or similar defects.

3.      Defendants knew or should have known that the Vehicles' sunroofs have defective seals and water drainage systems. Defects include, but are not limited to, a pinched drain tubes, cracks resulting from expansion of steel reinforcement plates surrounding the sunroof, and a failure of the sunroof seal to properly adhere to the body of the vehicle.

4.      The actual material cost of the sunroof is relatively low, yet Defendants are able to charge more for the same vehicle if it has a sunroof – making the sunroof option one of the most profitable features in the automotive industry.

5.      As a result of the defects, the sunroofs are prone to leak water into the interior of the Vehicles, distracting Plaintiff and interfering with the safe driving of the Vehicles. This water intrusion also results in damage to the interior, promotes the growth of harmful molds, and interferes with Vehicles' electronic systems.

**PARTIES**

6.      Plaintiff Joseph Campbell is a New York citizen who lives in Liverpool, New York. Mr. Campbell purchased a 2016 Volkswagen Golf.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendants.

7.      Volkswagen AG ("VWAG") is a corporation organized and in existence under the laws of the Federal Republic of Germany with its headquarters located in Wolfsburg, Germany. At all times relevant herein, VWAG, through its wholly-owned subsidiaries and/or agents, was

engaged in the business of importing, marketing, distributing, warranting, servicing, repairing and selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America.

8.      Volkswagen Group of America, Inc. ("VW") is a corporation organized and in existence under the laws of the State of New Jersey with its headquarters located in Herndon, Virginia. Defendant VW also maintains corporate offices in Woodcliff Lake and Englewood Cliffs, New Jersey. VW is a wholly owned subsidiary of VWAG. At all times relevant herein, VW was engaged in the business of importing, marketing, distributing, warranting, servicing, repairing and selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

10.     The Court has personal jurisdiction over Defendants because Defendants are authorized to, and conduct substantial business in New York, generally, and this District, specifically.  Defendants have marketed, promoted, distributed, and sold the Vehicles in New York.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as the Defect in Plaintiff's Vehicle manifested itself within this District.

12.     To the extent there is any contractual or other impediment to pursuit of these claims on a class action basis, Plaintiff specifically alleges, and will prove, if necessary, that any bar to class action proceedings is unconscionable, unfair and against public policy.

**Plaintiff's Individual Allegations**

13.     Mr. Campbell purchased his 2016 Volkswagen Golf certified preowned ("Mr. Campbell's Vehicle") from Burdick Volkswagen, a Volkswagen dealership located in in Cicero, New York.

14.     Initial leaks through the sunroof in Mr. Campbell's Vehicle began pouring water into the Vehicle's cabin, including water intrusion into the switch console. An overpowering odor also resulted from the water intrusion.

15.     Mr. Campbell has returned to the dealership seven times and they have not yet been able to correct the issue. Both the odor and the leak remain unabated.

16.     Mr. Campbell made his decision to purchase a Volkswagen Golf, in part, in reliance on representations communicated through Defendants advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendants' vehicles.

17.     Before purchasing his vehicle, Mr. Campbell test drove it. At the time of his purchase, he had no forewarning of the sunroof problem.

**Common Class Allegations**

18.     Plaintiff and the Class Members purchased their Vehicles under the assumption that they were fit for normal use and free of defect, and based on Defendants' representations regarding the safety and reliability of the Vehicles. Of course, driving the Vehicles in the rain, washing the Vehicles, or otherwise getting the Vehicles wet, are included in the normal use of the Vehicles. Nevertheless these activities resulted in interior water leakage due to the sunroof defect that

distracted drivers, damaged Vehicle interiors, and interfered with electrical components. This environmental distraction and basic defect makes the Vehicles unable to meet a minimal level of quality or safety.

19.     As alleged in greater detail herein, Defendants designed, manufactured, and approved of the defective sunroofs, and subsequently of the sale of the Vehicles to Plaintiff and the Class, without disclosing the sunroof defect. This omission of a material fact constitutes a deceptive business practice in violation of Illinois statutory law and further violates New York common law as set forth herein.

20.     This action seeks redress for Plaintiff and the Class in the form of compensatory damages, punitive damages, and injunctive relief, which would include, inter alia, an order directing Defendants to cease the challenged practices, including the manufacture, sale, and installation of defective, leaky sunroofs, and initiate a program to provide refunds, repairs, and/or restitution to Plaintiff and the Class.

21.     Prior to purchasing or leasing the Vehicles, Plaintiff and other Class Members did not know that the Vehicles suffered from the sunroof defect and did not contemplate that water intrusion would affect the Vehicles even with low mileage, or  virtually brand new.

22.     As a result of their reliance on Defendants' omissions and/or misrepresentation, owners and/or lessees of the Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Vehicles.

23.     Plaintiff and the Class have been damaged by Defendants' misrepresentations, concealment, and non-disclosure of the sunroof defect in the Vehicles, as they now have vehicles whose value has greatly diminished because of Defendants' failure to timely disclose the serious defect.

24.     Plaintiff brings claims against Defendants individually and on behalf of a Class of all other similarly situated purchasers of the Vehicles for violations New York Consumer Fraud and Deceptive Business Practices Act – 815 ILCS 505/1, et seq. and 720 ILCS 295/1a, Breach of Express Warranty, 819 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210, Breach of Implied Warranty of Merchantability, 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"), and violations of other state statutes prohibiting unfair and deceptive acts and practices.

25.     Had Plaintiff and the Class Members known about the sunroof defect at the time of sale or lease, as well as the associated costs related to the sunroof defect, Plaintiff and the Class Members would not have purchased the Vehicles or would have paid less for them.

26.     As a result of Defendants' practices, Plaintiff and Class members purchased Vehicles they otherwise would not have purchased, paid more for those Vehicles than they would have paid, were subjected to an unreasonable risk to their safety, and unnecessarily paid, and will continue to pay, repair costs as a result of the sunroof defect. They did not receive the benefit of their bargain.

## THE SUNROOF DEFECT IN THE VEHICLES

27.     Throughout the relevant period, Defendants have designed, manufactured, distributed, imported, warranted, marketed, advertised, serviced, sold, and leased the Vehicles. Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, thousands of the Vehicles in New York and nationwide.

28.     The Class includes those who purchased or leased 2015-present Audi A1 Mk2, Audi A3 Mk3, Audi TT Mk3, Audi Q2, Audi Q3, Volkswagen Arteon, Volkswagen Atlas/Teramont, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Polo,

Volkswagen Tiguan, Volkswagen Touran, and the Volkswagen Touareg vehicles that were designed, manufactured, distributed, marketed, and sold or leased with a sunroof ("Vehicles" or "Class Vehicles") by Defendants or Defendants' parent, subsidiary, or affiliates thereof.

29.     Defendants designed, manufactured, distributed, marketed, sold, and leased the Vehicles with a defective sunroof as described herein to Plaintiff and Class Members.

30.     Defendants knew or should have known that the Vehicles' sunroofs have one or more defects, including but not limited to that the Vehicles' sunroofs are defective and prone to leak due to problems with their drainage systems, seals, and/or a difference in the expansion rate between the plastic water channel and steel reinforcement plates that may cause stress cracks to occur at the edges of the reinforcement plates.

31.     Although the Vehicles' sunroofs were specifically and especially designed, manufactured, and approved by Defendants to be installed in the Vehicles, they are prone to leak water into the interior of the Vehicles, distracting Plaintiff and interfering with the safe driving of the Vehicles.

32.     The defective sunroofs in all of the Vehicles are substantially similar in design and manufacture.

33.     The actual material cost of the sunroof is relatively low, yet Defendants are able to charge more for the same vehicle if it has a sunroof – making the sunroof option one of the most profitable features in the automotive industry.

34.     All Defendants' Vehicles come with a New Vehicle Limited Warranty which states that Defendants will cover any repairs to correct a manufacturer's defect in material or workmanship for 3 years or 36,000 miles, whichever occurs first. On certain models this warranty

was extended to 6 years or 72,000 miles. The New Vehicle Limited Warranty is transferable without cost if the ownership of the vehicle changes within the warranty period.

35.     Upon information and belief, Defendants knew or should have known that the Vehicles are defective and were not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendants failed to disclose the sunroof defect to Plaintiff and the Class Members at the time of purchase or lease and thereafter.

36.     Defendants have long known that the Class Vehicles have a defective sunroof. Defendants' have exclusive access to information about the defects through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem. In contrast, the sunroof defect was not known or reasonably discoverable by Plaintiff and Class members prior to purchase and without experiencing the sunroof firsthand.

37.     Defendants knew of the defects in their sunroofs, including the sunroofs' likelihood of leaking, before selling the Vehicles to Plaintiff and the Class and installing them on their cars, but did not inform Plaintiff and the Class of this fact prior to their purchase.

Specifically, Defendants have seven dealers in the country that are Product Field Information ("PROFI") designated dealers, which means those dealers are the face of quality control with Defendants' engineers, helping them with technical issues. Defendants issued no less than three communications to their PROFI designated dealer(s) relating to the sunroof feature in the Vehicles and no less than an additional two communications were made to Defendants' dealers in general.

38.     Plaintiff is informed and believes that Defendants first communicated with its PROFI dealers concerning the defective sunroof's water leakage on January 7, 2016 with the following information request form[1]:

| PROFI Dealer Outbound Information Request Form | | | |
|---|---|---|---|
| **MY(s) Affected:** | 2015-2016 | **Issue ID #** | 2015-047 |
| **Vehicle Model(s):** | Golf SportWagen | **Photos (if applicable):** | |
| **VIN Range (if applicable):** | All | | |
| **Engine Code(s):** | All | | |
| **Gearbox (Manual / Automatic):** | All | | |
| **Issue Description / Symptom:** | | | |
| Water leak from sunroof / water stains on headliner. | | | |
| **Workshop Problem Validation Procedure:** | | | |
| Inspect vehicle for loose or pinched sunroof drain tubes. | | | |
| **Required Actions:** | | | |
| If a loose or pinched sunroof drain tube is found to be the cause of the complaint, please obtain pictures showing the condition of the sunroof drain tube and the location of the pinched/disconnected drain on the vehicle.  Please send pictures and vehicle information in to the Profi inbox with the title "2015-047 Golf SportWagen Sunroof Drain Tube."<br><br>Please repair the vehicle as needed. | | **VWoA Contact Information:** | |
| | | **Requestor:** | Jeff Zimmerman |
| | | **E-mail:** | jeffrey.zimmerman@vw.com |
| | | **Phone Number:** | 248-754-4340 |
| | | **Alternative Contact:** | Kevin Lentzer |
| | | **E-mail:** | kevin.lentzer@vw.com |
| | | **Phone Number:** | 248-754-5901 |

39.     Defendants also issued *twelve* Technical Service Bulletins ("TSBs") relating to leaking sunroofs in the Vehicles. The issue date of a TSB does not equate to Defendants' date of first knowledge about the problem, rather Defendants prior knowledge prompts issuance of a TSB.

---

[1] "PROFI Dealer Outbound Information Request Form" attached hereto as Exhibit A.

40.     Plaintiff is informed and believes that Defendants' first issued TSB is dated September 28, 2016. The September 28, 2016 TSB contained pictures of the water leakage and repair including the following[2]:



**Figure 1** (Water leaking through corner of water channel)

41.     Defendants also issued various Technical Tips ("Tech Tips") which are treated essentially the same as TSBs. Defendants distinguishes between a Tech Tip and a TSB because a Tech Tip is, according to the company, not associated with warranty claiming, while TSBs are. Similarly to TSBs, the issue date of a Tech Tip is not necessarily the company's date of first knowledge about the issue. Though Tech Tips are not based on warranty claims, Tech Tips are issued after Defendants have discovered a problem, investigated it, strategized how to "fix" the problem, and determined how the problem and "fix" should be communicated to dealers and/or

---

[2] Technical Bulletin dated September 28, 2016 attached hereto as Exhibit B.

consumers. Defendants have issued at least three Tech Tips relating to leaking sunroofs in the Vehicles.

42.     Plaintiff is informed and believes that Defendants first issued their first Tech Tip on November 18, 2016. This Tech Tip specifically directed that, if a dealer could not replicate the leak, to "clean sunroof drains and adjust sunroof glass according to repair manual" as shown below[3]:



43.     Defendants also issue Service Actions which address technical issues and Defendants advise that these actions should be completed on all affected vehicles promptly in order to prevent the known problem from occurring. Defendants issued no less than three Service Action notices relating to the sunroof feature in the Class Vehicles.

---

[3] Technical Tip dated November 18, 2016 attached hereto as Exhibit C.

44.    Defendants also issued one Special Notice and one Important Notice relating to the sunroof feature in the Class Vehicles.

45.    In sum, there have been at least twenty-five TSBs, Tech Tips, communications with PROFI dealers, communications with dealers, Service Actions, and Special or Important Notices related to the defective nature of the Vehicles' sunroofs and their propensity to leak.

46.    Upon information and belief, TSBs and Tech Tips, communications with PROFI dealers, communications with dealers, Service Actions, and Special or Important Notices are most often only in the possession and control of Defendants and their authorized service centers. Discovery in this matter should reveal whether more than the twenty-five communications described above related to the sunroof defect have been issued and when exactly Defendants first learned of this pervasive problem in the Vehicles.

47.    Had Defendants informed Plaintiff and the Class about the sunroof defect, Plaintiff and the Class would not have purchased the Vehicles from Defendants, but rather would have purchased different vehicles. Defendants knowingly sold a defective product to Plaintiff and the Class, without disclosing such defect, and now refuse to provide an adequate long-term remedy, repair, or restitution for their actions.

48.    Defendants' conduct described herein constitutes an omission of material fact and a deceptive business practice in violation of the New York statutory law and New York common law.

**CONSUMERS HAVE REPORTED THE SUNROOF DEFECT TO NHTSA**

49.    Defendants, like other automobile manufacturers, reviews complaints made by consumers to the National Highway Transportation Safety Administration ("NHTSA").

50.     Consumers have reported the sunroof defect to NHTSA, and in these complaints,

report having taken their Vehicles to Defendants' authorized dealerships in their attempts to have

the sunroof defect repaired.

51.     Examples of complaints made to NHTSA about the Vehicles' sunroof defect are

shown below, unedited:

- **NHTSA ID Number: 11300201, date complaint filed: 1/17/2020, 2016 Volkswagen Golf.**
  PANORAMIC SUNROOF LEAKS INTO THE INTERIOR A FRAME PILLARS. IT LEAKS IN THE RAIN, THE SNOW, AND EVEN THE CAR WASH. THE LEAK STARTS AS A DAMP SPOT IN THE INTERIOR WHERE THE HEADLINER MEETS THE A FRAME PILLAR. THE SUNROOF WILL LEAK IF THE CAR IS STATIONARY OR MOVING. THE LEAK WILL MAKE ITS WAY DOWN THE PILLAR AND ACROSS THE SIDE AIRBAG.

- **NHTSA ID Number: 11291119, date complaint filed: 12/24/2019, 2015 Audi Q3.**
  AUDI Q3 WHEN IT RAINS WATER LEAKS SOMEWHERE IN THE BACK OF MY CAR MOST LIKELY THE SUNROOF AND IT'S NOT DRAINING PROPERLY SO THE SEATBELTS ARE ALL SOAKING WET. MY CAR SMELLS MUSTY AND MOLDY. I HAVE READ THAT THERE ARE SEVERAL PEOPLE WITH THE SAME ISSUE.

- **NHTSA ID Number: 11230797, date complaint filed: 4/30/2019, 2017 Volkswagen Alltrack.**
  THIS PAST SPRING I NOTICED THE CAR'S HEADLINER WAS WET AND STAINED. IT THEN BEGAN TO DRIP COPIOUS AMOUNTS OF WATER INTO THE VEHICLE DURING HEAVY RAINSTORMS. THE CAR IS ONLY A YEAR AND A HALF OLD AND HAS 20,000 MILES. BUT THERE ARE WATER STAINS EVERYWHERE AND IT WILL BE A MOLD ISSUE SOON, I'M AFRAID. TOOK IT TO THE DEALER, THE CAR IS UNDER WARRANTY. THEY SAID IT'S A MAINTENANCE ISSUE, NOT A WARRANTY ISSUE BECAUSE THE DRAINS THAT RELEASE THE WATER FROM SUNROOF ARE ALL BLOCKED WITH DEBRIS. DEALER FIRST ASKED ME IF I HAD JUST SIMPLY LEFT THE SUN ROOF OPEN AND WAS VERY PATRONIZING, BY ASKING ME IF THERE WAS JUST A LEAF STUCK UP THERE, CALLING ME HUNNY OVER THE PHONE. I TOLD HIM NO, SOMETHING WAS WRONG AND WE DROPPED IT OFF. $600 TO CLEAR DRAINS. WE REFUSED BECAUSE WE FOUND MANY OTHER PEOPLE EXPERIENCING THE SAME PROBLEM WITH THE SAME CAR AND THERE IS A TECHNICAL SERVICE BULLETIN FOR THE PROBLEM. WE READ THE VW HELPED COVER THE COSTS FOR MANY PEOPLE SO WE CALLED VW CUSTOMER CARE. I ASKED FOR A

BUYBACK OR FOR THEM TO FIX THE CAR. THEY CALLED ME BACK
SAYING THERE WAS NOTHING THEY COULD DO AND REFUSED TO
ADMIT THIS IS A DEFECT IN THE DESIGN OF THE CAR. EVEN IF I JUST
GOT THE DRAINS CLEARED, THERE WAS STILL DAMAGE DONE BY
THE "MAINTENANCE" NOT BEING TAKEN CARE OF. "MAINTENANCE"
THAT WE KNEW NOTHING ABOUT AND THERE IS NOTHING IN THE
OWNER'S MANUAL ABOUT CLEARING THE DRAINS UNTIL AROUND
40,000 MILES. I WAS ASKED IF I PARKED UNDER TREES. WELL, YEAH,
WE CAMP A LOT. THIS CAR IS ADVERTISED AS AN ADVENTURE CAR.
I ALSO DON'T HAVE THE LUXURY OF PARKING IN A GARAGE. I'M A
TEACHER. I WORK HARD TO MAKE CAR PAYMENTS, BUT I BOUGHT
BRAND NEW CAR NOT KNOWING I WOULD NEED TO BE SPENDING
HUNDRED UPON HUNDREDS OF DOLLARS TO "MAINTAIN" SUNROOF
DRAINS. THE CAR IS CURRENTLY AT ANOTHER DEALER AND THEY
WANT NUMBERS IN THE THOUSANDS TO FIX THE WATER DAMAGE.

- **NHTSA ID Number: 11181731, date complaint filed: 2/21/2019, 2017
  Volkswagen Alltrack.**
  PANORAMIC SUNROOF LEAKS WHEN DRIVING IN THE RAIN. WINDOWS
  FOG UP, STAINS HEADLINER AND MOISTURE WILL OVER TIME CAUSE
  MOLD IN VEHICLE. IN COLD TEMPERATURE FROZEN CONDENSATION
  OBSERVED INSIDE OF VEHICLE WINDSHIELD AND BACK WINDOW
  MAKING IT DIFFICULT TO SEE OUT.

- **NHTSA ID Number: 11175989, date complaint filed: 2/21/2019, 2017
  Volkswagen Alltrack.**
  MY PANORAMIC SUNROOF HAS HAD AN ISSUE WITH WATER
  INTRUSION. DECEMBER OF 2017 I TOOK THE CAR INTO VW OF
  POHANKA, MARYLAN. THEY REPLACED THE HEADLINER, DRAINAGE
  TUBES, AND SMOOTHED OUT THE WELDS TO TRY AND FIX THE
  PROBLEM. I NOTICED THAT THE LEAK IS BACK WITH WATER STAINS
  ON THE A-PILLAR AND OVERHEAD. THE PROBLEM IS WE DO NOT
  KNOW WHERE THE WATER HAD LEAKED INTO. WE ARE AFRAID THAT
  THE WATER INTRUSION MAY CAUSE MORE PROBLEMS DOWN THE
  ROAD AND DO NOT WANT ANY ELECTRICAL ISSUES DUE TO THE
  WATER LEAK. OUR MAIN CONCERN IS THE DEPLOYMENT OF THE
  AIRBAGS LOCATED ON THE B-PILLAR AND THE POSSIBLE HEALTH
  ISSUES OF MOLD AND RUST. THE PROBLEM PERSISTS DURING THE
  RAIN SEASON.

- **NHTSA ID Number: 11104887, date complaint filed: 6/30/2018, 2017
  Volkswagen Alltrack.**
  THERES A WATER LEAK COMING FROM THE PANORAMIC SUNROOF.
  THE CAR IS USUALLY GARAGE KEPT BUT I HAD IT PARKED OUTSIDE
  ONE WEEKEND WHEN WE HAD BAD STORMS AND THATS WHEN I
  NOTICED THE WATER STAINS IN MY HEADLINER AND THE WATER
  DRIPPING DOWN INTO THE BACK HATCH AREA. THE DEALER HAD TO

SEND THE CAR TO A BODY SHOP TO HAVE THEM GRIND DOWN
WELDS THAT HAVE CAUSED AN OBSTRUCTION IN THE DRAINAGE
SYSTEM. THERES STAINS IN THE HEADLINER AND AN ODOR THATS
COMING FROM IT SO IT APPEARS TO HAVE MOLD. THEYRE SUPPOSED
TO FIX THE LEAK AND INSTALL A NEW HEADLINER BUT IM ALSO
WORRIED OF ANY ELECTRICAL DAMAGE THAT MAY ARISE AS A
RESULT. ITS BEEN ABOUT 4 WEEKS NOW AND THEY ARE STILL
TRYING TO REPAIR THIS. I FEEL LIKE THIS HAS BEEN A KNOWN ISSUE
AND YET THEY STILL SOLD ME THE CAR EVEN KNOWING THIS
COULD BE A POSSIBILITY. I PURCHASED THE CAR IN NOVEMBER 2017
AND I BOUGHT THE CAR TO THE DEALER TO REPAIR IN JUNE 2018.
THIS IS MY SECOND VOLKSWAGEN BUT WILL PROBABLY BE MY
LAST. I NEED A RELIABLE CAR THAT I CAN DRIVE AND NOT ONE
THAT SITS IN A REPAIR SHOP FOR WEEKS NOT KNOWING IF THE
ISSUE WILL ACTUALLY BE RESOLVED. FROM OTHER FORUMS IVE
READ, THIS IS A KNOWN MANUFACTURER DEFECT AND MANY
OTHERS ARE GOING THROUGH THIS SAME PAINFUL PROCESS.

- **NHTSA ID Number: 11299655, date complaint filed: 1/15/2020, 2015
Volkswagen Golf Sportwagen.**
THIS CAR WAS PURCHASED AS A CERTIFIED VEHICLE AFTER
RECEIVING THE EMISSIONS FIX.
AFTER LESS THAN 10,000 MILES AND ONLY ONE YEAR OF OWNERSHIP,
ALL MY DASHBOARD WARNING LIGHTS CAME ON (INCLUDING
AIRBAG ERROR) AND THE FLOOR MATS WERE SOAKED WHEN I
STARTED MY CAR AFTER A SEVERE RAIN STORM. I WAS TOLD THE
SUNROOF DRAINS WERE PLUGGED AND CAUSED THE ELECTRICAL
ISSUES. THE DRAIN BEING PLUGGED WITH DEBRIS IS CONSIDERED AN
EXTERNAL FACTOR AND THEREFORE THE REPAIRS ARE NOT
COVERED BY THE WARRANTY OF THIS CERTIFIED CAR. THE OWNER'S
MANUAL INDICATES THAT MAINTENANCE ON THE SUN ROOF DRAINS
IS RECOMMENDED AT 40,000 MILES. AS NOTED, THE CAR WAS BELOW
THE 40,000 MARK BUT HAD SAT IDLE FOR OVER A YEAR BETWEEN
THE TIME IT WAS BOUGHT BACK FROM THE ORIGINAL CUSTOMER TO
WHEN IT WAS SOLD AS A CERTIFIED VEHICLE.

- **NHTSA ID Number: 11317943, date complaint filed: 3/13/2020, 2016
Volkswagen Golf Sportwagen.**
VW SERVICE ACTION 60E5 APPLIES TO THE FRONT SUNROOF DRAIN
CLEANING AND MODIFICATION. WE HAD UNSEASONABLY HEAVY
RAINS OVER THE LAST 2 DAYS. THE RAINWATER BEGAN POURING
OUT UNDER THE STEERING WHEEL/FUSE BOX AREA AND CAME
THROUGH THE ENTIRE PERIMETER OF THE SUNROOF INTO THE CABIN
OF THE CAR. VW TOLD ME THAT ALL REPAIRS RELATING TO THE
SUNROOF LEAK WOULD BE COVERED UNDER THE SERVICE ACTION.
MY DAUGHTER HAS A COMPROMISED IMMUNE SYSTEM AND IS VERY

SENSITIVE TO MOLD AND ALLERGENS. THE SERVICE ADVISOR SAID
THE HEADLINER AND ALL ELECTRICAL WOULD BE DRIED WITH FANS
AND CLEANED AS NECESSARY. PLEASE TAKE A LOOK AT THE THREE
ATTACHED PHOTOS. THIS DAMAGE IS A RESULT OF A KNOWN DEFECT
WITH THE DESIGN OF THE SUNROOF AND I FEEL IT HAS NOT BEEN
REPAIRED TO THE STATE IT WAS IN BEFORE THE LEAK OCCURRED.
THIS IS JUST THE VISIBLE WATER DAMAGE. WE DO NOT KNOW THE
EXTENT OF ANY POSSIBLE DAMAGE TO ANY ELECTRICAL
COMPONENTS.

- **NHTSA ID Number: 11268708, date complaint filed: 10/15/2019, 2018
  Volkswagen Tiguan.**
  WATER LEAKS FROM SUNROOF AND DOORS. WATER FROM THE ROOF
  LANDS OF START ENGINE BUTTON. FLOORS FLOODED WITH WATER
  MAKES FOOT SLIPPERY.

- **NHTSA ID Number: 11265290, date complaint filed: 10/1/2019, 2018
  Volkswagen Tiguan.**
  PANORAMIC SUNROOF DEFECTIVE AND CAUSED MAJOR LEAKAGE OF
  WATER INTO VEHICLE. IN ADDITION, IT SEEMS LIKE CHEMICALS
  POSSIBILITY FROM WINDSHIELD FLUID LEAKING INSIDE VEHICLE.
  THIS RESULTED ON BLACK MOLD TO DEVELOP THROUGHOUT THE
  VEHICLE. ALL CARPETS REPLACED ON MY VEHICLE; HOWEVER,
  EXTREME FOUL CHEMICAL ODOR CONTINUES IN THE INTERIOR AND
  MAKES IT DIFFICULT TO BREATH. THE DEALER HAS MY VEHICLE FOR
  MORE THAN 9 DAYS AND STILL NO RESOLUTION. ISSUE STARTED
  WITH LESS THAN 1 YEAR OF OWNERSHIP OF THIS BRAND NEW CAR.
  EVEN WHEN VEHICLE IS PARKED ON MY DRIVEWAY WITH WINDOWS
  CLOSED YOU CAN SMELL THE CHEMICAL ODOR AROUND THE
  VEHICLE. FIRST OCCURRENCE REPORTED ON 7/3/19 AND NO
  RESOLUTION. SECOND OCCURRENCE: 9/21/19 AND STILL ONGOING

- **NHTSA ID Number: 11151619, date complaint filed: 11/14/2018, 2018
  Volkswagen Tiguan.**
  PANORAMIC MOONROOF LEAKAGE.WATER DRIPPING INSIDE VEHICLE
  ABOVE HEAD ON REAR RIGHT SIDE AND GOING DOWN INTO
  SEATBELTS COMPARTMENT.VEHICLE WAS STATIONARY.WATER
  DRIPPING IINSIDE SEAT BELT COMPARTMENT IN MY OPINION MAY
  CAUSE SHORT SINCE SOME ELECTRICAL GOING THRU SAME
  COMPARTMENT.

## THE SUNROOF DEFECT HAS HARMED PLAINTIFF AND THE CLASS

52.     The sunroof defect has caused injury to Plaintiff and the Class.

53.     A vehicle purchased, leased, or retained with a material defect is worth less than the equivalent vehicle leased, purchased, or retained without the defect.

54.     A vehicle purchased, leased, or retained under the reasonable assumption that it is safe is worth more than a vehicle known to contain a defect.

55.     Purchasers and lessees paid more for the Vehicles, through a higher purchase price or higher lease payments, than they would have had the sunroof defect been disclosed.  Plaintiff and the Class overpaid for their Vehicles.  Because of the concealed sunroof defect, Plaintiff and Class did not receive the benefit of their bargains.

56.     Class members who purchased new or used Vehicles overpaid for their Vehicles as a direct result of Defendants' ongoing violations of state consumer protection laws by failing to disclose the existence of the sunroof defect.

57.     Plaintiff and the Class have been denied the use and enjoyment of the Vehicles, suffering distractions and a safety hazards by driving Vehicles that leak water through the sunroof.

58.     Leaking water can also cause damage to the interior of the car, promote harmful mold development, interfere with the cars electronics, along with other damage that may not immediately reveal itself due to the insidious nature of water intrusion.

59.     The Vehicles were worth less than they would have been but for the Defendants' failure to disclose and remedy the sunroof defect.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a class initially defined as follows:

**All persons in the United States who formerly or currently own or lease one or more of the Vehicles.**

61.     Plaintiff also seeks relief in his individual capacity and seeks to represent a sub-class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a sub-class initially defined as follows:

**All persons in the State of New York who formerly or currently own or lease one or more of the Vehicles, purchased and/or serviced in the State of New York.**

62.     Excluded from the Class are Defendants and their subsidiaries and affiliates, Defendants' executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Vehicles for the purpose of resale.

63.     Plaintiff reserves the right to amend or modify the Class and sub-class definitions with greater specificity or division into other subclasses after they had an opportunity to conduct discovery.

64.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that at or near 100,000 consumers in the United States have purchased or leased the Class Vehicles.

65.    <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.    Whether the Vehicles suffer from the sunroof defect;

b.    Whether Defendants violated  New York General Business Law § 349

c.    Whether Defendants violated  New York General Business Law § 350

d.    Whether Defendants were negligent;

e.    Whether Defendants fraudulently concealed the sunroof defect;

f.    Whether Defendants are liable for a design defect;

g.    Whether Defendants breached an express warranty, N.Y. U.C.C. Law §§ 2-313 and 2A-210;

h.    Whether Defendants breached an implied warranty of merchantability, N.Y. U.C.C. Law §§ 2-314 and 2A-212;

i.    Whether Defendants violated the other state statutes prohibiting unfair and deceptive acts and practices; and

j.    The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

66.    <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendants' unlawful conduct.

67.    <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

68.    Superiority of Class Action. Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

69.    Injunctive and Declaratory Relief.  Fed. R. Civ. P. 23(b)(2).  Defendants' misrepresentations are uniform as to all members of the Class.  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Violations of New York General Business Law § 349)

70.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

71.    Plaintiff brings this claim individually and on behalf of a Class of New York residents who formerly or currently own or lease one or more of the Vehicles.

72.    Plaintiff, the New York Class members and all Defendants are "persons" under N.Y. Gen. Bus. Law §349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

73.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

74.    The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under this section.

75.     Defendants designed, manufactured, and approved of the defective sunroofs, and subsequently of the sale of the Vehicles to Plaintiff and the Class, without disclosing the sunroof

defect. During normal operation the sunroof defect would not reveal itself unless certain environmental conditions existed, e.g. heavy rains. Plaintiff and New York Class members had no way of discerning that Defendants representations of safety and reliability were false and misleading because the sunroof defect would not reveal itself on normal inspection and/or test drive. At a minimum, this omission of a material fact constitutes a deceptive business practice in violation of New York statutory law and further violates New York common law as set forth herein.

76.     Defendants thus violated the provisions of the NY DAPA by, at a minimum: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Vehicles with the intent not to sell them as advertised; (4) failing to disclose information concerning the Vehicles with the intent to induce consumers to purchase or lease the Class Vehicles.

77.     Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the NY DAPA by installing, failing to disclose and actively concealing the sunroof defect by marketing its vehicles as reliable, safe, and of high quality.

78.     Defendants' conduct is unlawful in that it violates the Transportation Recall Enhancement, Accountability and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30101, *et seq.* (by failing to timely inform the NHTSA of the sunroof defect and allowing the Vehicles to be sold with the sunroof defect).

79.     Defendants knew the sunroofs they installed in their cars were defective after having received numerous complaints, and issuing guidance in various forms to dealers, regarding the defects. Nevertheless, Defendants continued to design, sell, manufacture, and market cars with

the defective sunroofs all while concealing the defects from customers. Defendants did this because, though sunroofs are a relatively low cost item to manufacture, they add significantly to the Vehicle's purchase price, making it one of the most profitable options available to Defendants.

80.     Defendants' intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the New York Class.

81.     Volkswagen knew or should have known that its conduct violated the NY DAPA.

82.     Defendants owed Plaintiff a duty to disclose the sunroof defect and safety risks of the Vehicles because they:

    a.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with the sunroof defect;

    b.     intentionally concealed the foregoing from Plaintiff, Class members; and/or

    c.     made incomplete representations about the safety and reliability of the Vehicles given their knowledge of the sunroof defect.

83.     Defendants' use of a defective sunroof and their omission of any representation regarding the defect were material to Plaintiff and the New York Class.

84.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety, reliability, quality and true value of the Vehicles.

85.     Plaintiff and the New York Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its to disclose material information. Plaintiff and the New York Class members who purchased or leased the Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been

disclosed and mitigated—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

86.     Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

87.     As a direct and proximate result of Defendants' violations of the New York DAPA, Plaintiff and the New York Class have suffered injury-in-fact and/or actual damage.

88.     As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and the New York Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

**SECOND CAUSE OF ACTION**
**(Violations of New York General Business Law § 350)**

89.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

90.     Plaintiff brings this claim individually and on behalf of the New York Class against Defendants.

91.     Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law §350, the New York False Advertising Act ("NY FAA")

92.     The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

93.     Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be untrue and misleading to Plaintiff and the New York class.

94.     Defendants made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Vehicles, particularly concerning the safety, reliability, and functioning of the sunroof. Specifically, Defendants intentionally concealed and suppressed material facts concerning the quality of the Vehicles in order to intentionally and grossly defraud and mislead the Plaintiff and the New York Class members concerning the defective sunroofs.

95.     The misrepresentations and omissions regarding set forth above were material and likely to deceive a reasonable consumer. Specifically, although Defendants advertised the Vehicles as safe, reliable, and free of defect, the sunroofs in the Vehicles were prone to leaking.

96.     Defendants intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the New York Class.

97.     Defendants' false advertising was likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and New York Class members, about the true characteristics of the Vehicles, including their sunroofs, and the true value of the Vehicles.

98.     Defendants' violations of the NY FAA present a continuing risk to Plaintiff and to the general public. Defendants' deceptive acts and practices affect the public interest.

99.     The Class Vehicles, and specifically their sunroofs, do not perform as advertised, also making them far less valuable than advertised.

100.     Plaintiff and New York Class members who purchased Vehicles either would not have purchased them at all or paid less but for Volkswagen's false advertising in violation of the NY FAA. Plaintiff and New York Class members who leased Vehicles either would not have leased them at all, or at a lower rate but for Volkswagen's false advertising in violation of the NY FAA.

101.     The Plaintiff and the New York Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendants' false advertising in violation of the NY FAA, including but not limited to purchasing or leasing an illegal vehicle, diminished or complete lost value for the Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendants' violations of the NY FAA.

102.     Plaintiff and the New York Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York class members. Because Volkswagen's conduct was committed willingly and knowingly, New York class members are entitled to recover three times actual damages, up to $10,000.

103.     The New York Class also seeks an order enjoining Defendants' false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

### THIRD CAUSE OF ACTION
#### (Negligence)

104.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

105.     Plaintiff brings this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of New York residents who formerly or currently own or lease one or more of the Class Vehicles.

106. Defendants had a duty to its customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably fit for their intended uses. Defendants had a duty to adequately test its Vehicles before selling to consumers worldwide.

107. Defendants had a duty to test Vehicles for sunroof problems once Defendants were on notice that its Vehicles had a propensity to leak through the sunroof that cannot and is not resolved through ordinary repairs.

108. Defendants had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of its Vehicles.

109. At all times relevant, Defendants sold, marketed, advertised, distributed, and otherwise placed Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

110. Defendants were negligent, and breached the above duties owed to Plaintiff and Class members.

111. As direct and proximate causes of Defendants' breaches, Plaintiff and the Class have been damaged including, but not limited to, the cost of repairs required to attempt to resolve the leaking, and the inability to satisfactorily repair the sunroof defect, the financial loss of owning or leasing the Vehicles that are unsafe due to the leak when used for their intended purpose, and being subjected to potential risk of injury as a result of distraction of the Vehicle driver or third party distractions.

## FOURTH CAUSE OF ACTION
### (Product Liability – Design Defect)

112.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

113.    Plaintiff brings this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of New York residents who formerly or currently own or lease one or more of the Vehicles.

114.    Defendants designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the Vehicles and their defective sunroof parts, which were intended by Defendants to be used as passenger vehicles and for other related activities.

115.    Defendants knew that the Vehicles were to be purchased and used without inspection for sunroof defects by Plaintiff and Class members.

116.    The Vehicles were unfit for their intended uses by reason of the sunroof defect in their manufacture, design, testing, components, and constituents, so that they would not safely serve their ordinary and intended purpose.

117.    Defendants designed and/or manufactured the Vehicles defectively, causing them to fail to perform as safely as an ordinary customer would expect when used in an intended or reasonably foreseeable manner.

118.    Plaintiff and Class members were not aware of the sunroof defect at any time prior to the recent revelations regarding problems with the Vehicles.

119.    As direct and proximate causes of the sunroof defect, Plaintiff and the Class have been damaged including, but not limited to, the cost of repairs required due to the sunroof defect, and the financial loss of owning the Vehicles that are unsafe.

## FIFTH CAUSE OF ACTION
### (Violation of Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.*)

120.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

121.    Plaintiff brings this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of New York residents who formerly or currently own or lease one or more of the Class Vehicles.

122.    Plaintiff and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

123.    Defendants are each a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

124.    The Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

125.    As pleaded in detail *supra*, this Court has jurisdiction over Plaintiff's claims pursuant to CAFA, thereby satisfying the federal court's jurisdictional requirements.

126.    Defendants affirmed the fact, promise, and/or described in writing that the Vehicles would meet a specified level of performance over a specified period of time.

127.    Defendants' written affirmations of fact, promises, or descriptions related to the nature of the Vehicles and became part of the basis of the bargain between Plaintiff and Defendants. Defendants refuse to recognize or honor the written warranties and, indeed, denies the existence of these warranties.  Defendants breached its written warranties when the Vehicles did not perform as represented by Defendants and thereafter when Defendants refused to recognize or honor the warranties.  Defendants' conduct thereby caused damages to Plaintiff and Class members.

128.    The amount in controversy of each of Plaintiff's individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value

of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit. The Class includes far more than 100 members and this Court has alternate jurisdiction over this matter under CAFA as pleaded above.

129.   Resorting to any informal dispute resolution procedure and/or affording Defendants a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile.  At the time of sale to Plaintiff, Defendants knew, should have known, or were reckless in not knowing of its misrepresentations or omissions concerning the sunroof defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiff.  Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances.  Accordingly, any statutory requirement that Plaintiff resort to any informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of written warranties is excused and, thereby, deemed satisfied.

130.   As a direct and proximate result of Defendants' breach of written warranties, Plaintiff and Class members sustained damages and other losses.  Defendants' conduct caused Plaintiff's and Class members' damages and, accordingly, Plaintiff and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other equitable relief as appropriate.

## SIXTH CAUSE OF ACTION
### (Breach of Express Warranty, N.Y. U.C.C. Law §§ 2-313 and 2A-210)

131.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

132.   Plaintiff brings this claim individually and on behalf of the New York Class, against Defendants.

133.   The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

134.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

135.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

136.    In connection with the purchase or lease of each one of its new vehicles, the Defendants provide an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. This NVLW exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

137.    The Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and other New York Class members purchased or leased their Vehicles equipped with defective sunroofs.

138.    Plaintiff and the New York Class members experienced defects within the warranty period. Despite the existence of warranties, the Defendants failed to inform Plaintiff and New York Class members that the Vehicles were intentionally designed and manufactured with a defective sunroof.

139.    The Defendants breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied. The Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Vehicles' materials and workmanship defects.

140.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other New York Class members whole and because the Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

141.    Accordingly, recovery by Plaintiff and the other New York Class members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other New York Class members, seek all remedies as allowed by law.

142.    Also, as alleged in more detail herein, at the time the Defendants warranted and sold or leased the Vehicles, they knew that the Vehicles were inherently defective and did not conform to their warranties; further, the Defendants had wrongfully and fraudulently concealed material facts regarding the Vehicles. Plaintiff and the other New York Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

143.    Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other New York Class members' remedies would be insufficient to make Plaintiff and the other New York Class members whole.

144.    Finally, because of the Defendants' breach of warranty as set forth herein, Plaintiff and the other New York Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other New York Class members of the purchase or lease price of all Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

145.    The Defendants were provided notice of these issues by numerous complaints filed with NHTSA, and admit to the defect as early as 2016.

146.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and the other New York Class members have been damaged in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability,**
**N.Y. U.C.C. Law §§ 2-314 and 2A-212)**

147.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

148.    Plaintiff brings this claim on behalf of the New York Class, against Defendants.

149.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

150.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

151.    The Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

152.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2314 and 2A-212.

153.    These Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Vehicles are inherently defective in that they contain a defective sunroof; and the sunroof was not adequately designed, manufactured, and tested.

154.    The Defendants were provided notice of these issues by numerous complaints filed with NHTSA, and admit to the defect as early as 2016.

155.    As a direct and proximate result of the Defendants' breach of the implied warranty

of merchantability, Plaintiff and the other New York Class members have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### (Violations of the Other State Statutes Prohibiting Unfair and Deceptive Acts and Practices)

156.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

157.    Plaintiff brings this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of subclasses of the other states' residents who formerly or currently own or lease one or more of the Vehicles.

158.    The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

159.    Defendants' actions violate the Deceptive Trade Practices Acts of the various states, as set out more fully above, by failing to disclose and by actively concealing the sunroof defect.

160.    The conduct described in the statement of facts constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices.  The deceptive trade practices acts violated by Defendants are set forth in the next paragraph.

161.    The violations of the various state consumer protection acts (Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 et seq.); Arkansas: the Arkansas Deceptive Trade

Practices Act (Ark. Code Ann. §4-88-101 et seq.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.);  Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. §10-1-390 et seq.); and the False Advertising Statute (Ga. Code Ann. §10-1-420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A et seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 et seq.); Illinois: the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1 et seq. (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq. (Smith Hurd)); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas:  the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Kentucky: the Consumer Protection Act (Ky. Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211 et seq.); Maryland: the Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Minnesota: the Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann.

§325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the

Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq.) and the False Advertising Statutes

(Miss. Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat.

§407.010 et seq.);  Montana: the Montana Unfair Trade Practices and Consumer Protection Act

(Mont. Code Ann. §30-14-101 et seq.); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-

712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the

Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 et seq.); Nevada: the

Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.);  New Hampshire:

the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1

et seq.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 et seq. (West));

New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York:

New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350 (Consol.)); North Carolina:

North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North

Dakota: Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 et. seq.); Ohio:  Ohio

Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma:

Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the

Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon:

the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 et seq.) and the Oregon Food and Other

Commodities Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and

Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon); Rhode Island: Consumer

Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade

Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota: South Dakota Deceptive Trade

Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Texas: Texas

Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 et seq. (Vernon)); Utah: Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 et seq.) and the Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 et seq.); Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 et seq.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.)) have directly, foreseeably, and proximately caused damages to Plaintiff and proposed class in amounts yet to be determined.

162.    As a result of Defendants' violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiff and Class members have suffered actual damages for which Defendants are liable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Defendants, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff Joseph Campbell as Class Representative and appointing the undersigned counsel as Class Counsel;

B.    Ordering Defendants to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.    Ordering Defendants to pay statutory damages, as allowable by the statutes asserted

herein, to Plaintiff and the other members of the Class;

D.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective recall campaign;

E.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

F.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

G.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:  May 6, 2020                              Respectfully submitted,


Tina Wolfson (Bar Roll No. 701806)
*twolfson@ahdootwolfson.com*
Christopher E. Stiner
*cstiner@ahdootwolfson.com*
Ruhandy Glezakos
*rglezakos@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585

37

EXHIBIT A

## PROFI Dealer Outbound Information Request Form

| MY(s) Affected: | 2015-2016 | Issue ID # | 2015-047 |
|---|---|---|---|
| Vehicle Model(s): | Golf SportWagen | Photos (if applicable): | |
| VIN Range (if applicable): | All | | |
| Engine Code(s): | All | | |
| Gearbox (Manual / Automatic): | All | | |

**Issue Description / Symptom:**

Water leak from sunroof / water stains on headliner.

**Workshop Problem Validation Procedure:**

Inspect vehicle for loose or pinched sunroof drain tubes.

**Required Actions:**

If a loose or pinched sunroof drain tube is found to be the cause of the complaint, please obtain pictures showing the condition of the sunroof drain tube and the location of the pinched/disconnected drain on the vehicle.  Please send pictures and vehicle information in to the Profi inbox with the title "2015-047 Golf SportWagen Sunroof Drain Tube."

Please repair the vehicle as needed.

**VWoA Contact Information:**

| Requestor: | Jeff Zimmerman |
|---|---|
| E-mail: | jeffrey.zimmerman@vw.com |
| Phone Number: | 248-754-4340 |
| Alternative Contact: | Kevin Lentzer |
| E-mail: | kevin.lentzer@vw.com |
| Phone Number: | 248-754-5901 |

EXHIBIT B

# Technical Bulletin

| Model(s) | Year | Eng. Code | Trans. Code | VIN Range From | VIN Range To |
|----------|------|-----------|-------------|----------------|--------------|
| Golf, Golf GTI | 2015-2017 | All | All | AU_FM082335 | AU_HM012965 |

## Condition

**60 16 06** September 28, 2016 **2045403**

**Water leak from the Panoramic Roof**

 **Note:**

**This bulletin must be read in its entirety before beginning repair.**

Verify the customer complaint.  Water leaks occur near the A-Pillars in the corners of the sunroof water channel.



**Figure 1** (Water leaking through corner of water channel)

Remove the wind deflector, inner sunroof seal and thoroughly clean the water channel with isopropyl alcohol, a microfiber cloth and compressed air prior to inspecting for cracks.

© **2016 Volkswagen Group of America, Inc.**

All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior permission written permission of the publisher.

# Technical Bulletin

---

Inspect the sunroof water channel for stress cracks (see figure 2). There are a total of 8 areas to inspect for cracks which are outlined in Figure 3 below. (More than 1 crack may be found).



**Figure 2** (Examples of stress cracks in water channel)



**Figure 3** (Inspections zones for stress cracks / application zones and sequence for foil application)

## Technical Background

A difference in the expansion rate between the plastic water channel and steel reinforcement plates may cause stress cracks to occur at the edges of the reinforcement plates.

## Production Solution

Updated parts in production as of VIN AU_HM012965.

---

© 2016 Volkswagen Group of America, Inc.
All rights reserved. Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

## Service

**Install Sunroof Water Channel Repair Kit**

1. Move the front seats forward and tilt the seat backs forward to allow room to work on the roof by standing through the sunroof opening from the rear of the vehicle (See Figure 4).

 **Note:**

Care must be taken not to damage center console by kneeling or leaning against it during repair process.



**Figure 4**

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

2. Remove the inner sunroof seal from around the front of the sunroof opening and lay it back over the sunroof glass (See figures 5 and 6).

 **Tip:**

Masking tape can be used to hold the seal in place on top of the sunroof glass for the duration of the repair.



**Figure 5** (Inner Sunroof Seal)



**Figure 6** (Inner sunroof seal draped over sunroof glass)

3. Remove the wind deflector according to the repair manual in ELSA.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

4. Thoroughly clean the water channel with isopropyl alcohol, a microfiber cloth and compressed air.  Use a bone tool or the squeegee supplied with the repair kit to clean the area underneath the sunroof trim panel by pushing the cloth underneath the trim (See Figure 7).

 **Note:**

Any dirt or debris will prevent the repair from being performed properly.



**Figure 7**

5. Wait at least 10 minutes after cleaning the water channel before proceeding to allow alcohol to evaporate.

6. Use masking tape to lift and compress the outer sunroof seal to provide additional access to the water channel underneath the sunroof trim panel (See Figures 8 and 9).



**Figures 8 and 9**

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

7. For all cracks, put a 1 mm bead of sealant (Teroson MS-930, part number D  172090A2) over any existing cracks, 1 at a time. Start the sealant bead as far under the sunroof trim as possible and pull the bead to the end of the crack.

 **Note:**

The nozzle supplied with the sealant is already cut to a 1 mm opening.

Only work on 1 crack at a time due to the short cure time of the sealant.

 

**Figures 10 and 11** (Sealant application)

8. Using the squeegee supplied with the repair kit, spread the sealant pushing it underneath the trim panel from the inside edge of the roof opening to completely cover the crack.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

---

9. Remove all excess sealant from the water channel. There must not be any excess sealant that may prevent the foils from being applied completely flat to the water channel. The crack should be filled with sealant with no excess sealant around the crack (See figures 12 and 13).

 **Tip:**

Cleaning solution (part number D  00940104) can be used to remove any sealant smears in the surrounding areas.



**Figures 12 and 13** (Spread sealant working from sunroof opening to underneath the trim panel. Sealant should fill crack and there should be no excess sealant on the water channel.)

10. Repeat process for all cracks in frame.

11. Wait 30 minutes for sealant to cure before applying the foils to the water channel.

---

© **2016 Volkswagen Group of America, Inc.**
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

12. Apply the foil tapes one at a time according to the sequence shown in Figure 14.

 **Note:**

**Foil tapes must be applied in all 8 positions regardless if there is a crack or not.**

 **Tip:**

For foil positions 2 and 4, it is more important to apply the foil as far underneath the trim panel as possible then attempting to align the foil with the seal channel.  Foil positions 3 and 4 should not overlap each other. DO NOT cover the water drain hole or the witness line around the water drain with the foil in positions 3 or 4 (See Figure 15).



**Figure 14** Foil application sequence (Both sides of water channel).

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin



**Figure 15** Drain hole and witness line.

13. Starting in position 1, peel half of the backing tape off the foil and fold it over to use to hold the foil during application. Align the foil with the inner edge of the water channel and apply the foil, working it forward using the included squeegee to ensure there are no air bubbles, wrinkles and that there are no gaps under the foil.  Peel backing tape off as you work forward. Use the squeegee to work the tape down as smooth as possible.

 **Note:**

**Position 1 is required solely for reinforcement of the water channel.**



**Figure 16** Peel half of backing tape off foil and fold in half to use to hold the foil as it is applied.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Technical Bulletin

 **Tip:**

There may be a burr on the water channel in this location that appears to be an air bubble. This is normal and an acceptable condition after applying the foil (Figure 17).

 **Tip:**

The foil positions are designed to cover witness lines in the water channel. It is normal to see a line in the foil after it is applied.



**Figure 17** Burr under foil position 1.

© 2016 Volkswagen Group of America, Inc.

All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

14. In position 2, peel half of the backing tape off the section of foil to be placed underneath the trim panel and fold it over to use to hold the foil during application. Ensure the tape is as far underneath the trim panel as possible before beginning to adhere it to the water channel. Apply the foil working it toward the rear using the included squeegee to ensure there are no air bubbles or wrinkles and that there are no gaps under the foil.  Peel backing tape off as you work.  Use the squeegee to work the tape down smooth and as far underneath the trim panel as possible (Figure 18).



**Figure 18** Foil positions 1 and 2 fully applied.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin

15. In position 3, peel half of the backing tape off starting at the pointed edge in the radius and fold it over to use to hold the foil during application. Carefully align the radius of the foil to the radius of the seal channel and ensure the drain hole and witness mark around the drain will not be covered. Apply the foil working it forward using the included squeegee to ensure there are no air bubbles or wrinkles and that there are no gaps under the foil.  Peel backing tape off as you work.  Use the squeegee to work the tape down smooth and as far underneath the trim panel as possible (Figure 19).



**Figure 19** Foil position 3 fully applied.



**Figure 20** Foil position 3 <u>incorrectly applied</u> covering witness line around drain.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Technical Bulletin

 **Tip:**

Foil position 4 is the most difficult position to install. The foil must not overlap the foil in position 3, it must not cover the witness line around the drain, and it is difficult to place under the trim due to the limited work space. This position is very easily folded over due to this.

16. In position 4, peel half of the backing tape off the section of foil to be placed underneath the trim panel and fold it over to use to hold the foil during application.  Use a pivoting motion to swing the foil underneath the trim. Ensure the tape is as far underneath the trim panel as possible before beginning to adhere it to the water channel. Apply the foil working it from underneath the trim toward the sunroof opening.  Use the included squeegee to ensure there are no air bubbles or wrinkles and that there are no gaps under the foil. Peel backing tape off as you work. Use the squeegee to work the tape down smooth and as far underneath the trim panel as possible (Figures 21 and 22).



1.



2.



3.



4.

**Figure 21** Use a pivoting motion to work foil underneath trim panel in position 4.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin



**Figure 22** Foil position 4 fully applied.

 **Tip:**

It is more important that the foil in position 4 be applied as far underneath the trim panel as possible versus attempting to align it to the edge of the seal channel.

17. After all four foils have been applied to one side of the water channel, repeat steps 12-16 on the opposite corner of the water channel.

18. Once all 8 foils have been applied to the water channel, inspect the foils to ensure they are completely flat to the water channel and that there are no air bubbles or gaps underneath the foil.  Use the squeegee to help push out any defects (Figures 23 and 24).

 **Tip:**

Use a flashlight at different angles to help identify any air bubbles.  If any foil needs to be removed and reinstalled, discard the foil and use a new piece (Figures 25 and 26).

 

**Figures 23 and 24** Air bubble under foil, air gap underneath foil.

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

# Technical Bulletin



**Figure 25 and 26** use a flashlight to help identify any air bubbles in the foils and use the squeegee to work out any defects.

 **Tip:**

The foil must be fully applied underneath the trim panel.  If the foil is folded over, it should be removed and a new piece applied (see figure 27).  Use the squeegee to work the foil down on to the water channel as far underneath the trim panel as possible.



**Figure 27** Foil folded and not adhered underneath trim panel

19. Reinstall the wind deflector and sunroof seal.

20. Close the sunroof and water test the vehicle to ensure there are no additional leaks.

© **2016 Volkswagen Group of America, Inc.**
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Technical Bulletin

---

## Warranty

| To determine if this procedure is covered under Warranty, always refer to the Warranty Policies and Procedures Manual [1] | | | | | |
|---|---|---|---|---|---|
| **Model(s)** | **Year(s)** | **Eng. Code(s)** | **Trans. Code(s)** | **VIN Range From** | **VIN Range To** |
| Golf, Golf GTI | 2015-2017 | All | All | AU_FM082335 | AU_HM012965 |
| **SAGA Coding** | | | | | |
| Claim Type: | Use applicable Claim Type [1] | | | | |
| **Service Number:** | **Damage Code** | | **HST** | | **Damage Location (Depends on Service No.)** |
| 6052 | 0050 | | -- | | Use applicable when indicated in Elsa (L/R) |
| Parts Manufacturer | | Golf, Golf GTI | | 3YK [2] | |
| **Labor Operation** [3]**: Install Sunroof Water Channel Repair Kit** | | 60524199 = 170 TU | | | |
| **Labor Operation** [3]**: Water Test** | | 60520399 = 20TU | | | |
| **Causal Part:** | | 5GM898041 | | | |
| **Diagnostic Time** [4] | | | | | |
| GFF Time expenditure | 01500000 = 00 TU max. | | NO | | |
| Road Test | 01210002 = 00 TU<br>01210004 = 00 TU | | NO | | |
| Technical Diagnosis | 01320000 = 20 TU max. | | YES | | |
| **Claim Comment: Input "As per Technical Bulletin 2045403" in comment section of Warranty Claim.** | | | | | |
| [1] **Vehicle may be outside any Warranty in which case this Technical Bulletin is informational only** | | | | | |
| [2] **Code per warranty vendor code policy.** | | | | | |

© 2016 Volkswagen Group of America, Inc.
All rights reserved. Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Technical Bulletin

---

| 3) Labor Time Units (TUs) are subject to change with ELSA updates. |
| :--- |
| 4) Documentation required per Warranty Policies and Procedures Manual. |

## Required Parts and Tools

| Part No: | Part Description | Quantity |
| :---: | :---: | :---: |
| 5GM 898 041 | Repair Kit | 2 |
| D  172 090 A2 | Sealant | 1 |

No Special Tools Required.

## Additional Information

**All part and service references provided in this Technical Bulletin are subject to change and/or removal. Always check with your Parts Dept. and Repair Manuals for the latest information.**

| Document Control Revision Table | | | |
| :---: | :---: | :---: | :---: |
| Instance Number | Published Date | Version Number | Reason For Update |
| 2045403/01 | 9/28/16 | V601606 | Original Publication. |

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

EXHIBIT C



# Tech Tips

**TT 60-16-03**

**Date: November 18, 2016**

**2015-2017 Golf, GTI – Sunroof Concern Diagnostic Tree to address Water Leaks, Wind Noise, Mechanical Concerns**

For these concerns, please utilize the diagnostic tree and reference the technical bulletins mentioned, as necessary.



© 2016 Volkswagen Group of America, Inc.
All rights reserved. Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.

ver1.2



# Service Information



© 2016 Volkswagen Group of America, Inc.

All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice.  No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Service Information



© 2016 Volkswagen Group of America, Inc.

All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice.  No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Service Information

© 2016 Volkswagen Group of America, Inc.

All rights reserved. Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice. No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.



# Service Information

© 2016 Volkswagen Group of America, Inc.
All rights reserved.  Information contained in this document is based on the latest information available at the time of printing and is subject to the copyright and other intellectual property rights of Volkswagen Group of America, Inc., its affiliated companies and its licensors. All rights are reserved to make changes at any time without notice.  No part of this document may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, nor may these materials be modified or reposted to other sites, without the prior expressed written permission of the publisher.